## Kentucky and West Virginia Power Company v. Ratliff, et al.

(Decided October 25, 1927.)

### Appeal from Pike Circuit Court.

1.  Electricity.—Undisputed evidence that electric light company had forbidden its employees to do house wiring, and that owner living in dwelling house when change of wiring, ordered by company, was made, at his request, by company's meter man, knew of such limitation of authority, held to entitle company to directed verdict, in action for damages by fire resulting from negligent manner in which change was made.

2.  Electricity.—Electric light company, sending current into building with knowledge that wiring and fixtures are defective, is liable for damages ensuing, though it does not own, and is not charged with duty to inspect, such wiring and fixtures.

3.  Electricity.—Where sole ground of negligence pleaded and relied on by plaintiffs, in action against electric light company for damages to house by fire, was negligent splicing of wires and leaving them uninsulated and exposed in changing wiring system, plaintiffs could not urge defendant's liability for sending current into house with knowledge of defective wiring.

HARMAN, FRANCIS & HOBSON for appellant.

MOORE & CHILDERS and W. R. BELCHER for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Reversing.

Appellant, Kentucky & West Virginia Power Company, is a corporation engaged in manufacturing and selling electric current. It furnishes electricity to the residents of Elkhorn City, Pike county, Ky. Appellees W. M. Ratliff, Nancy Wallace, and Delphia Wallace formerly owned a dwelling house in that town. It had been wired for electricity by appellees, and they were purchasing electric current for lighting purposes from appellant.

In June, 1925, their dwelling house burned, and thereafter they instituted this action to recover the damages occasioned to them by the fire from appellant, upon the theory that the fire and consequent damages were the proximate result of its negligence. The negligence charged was that appellant, in changing the system of wiring in their residence so as to comply with its requirements, and in cutting and splicing and making new connections, while so doing negligently placed and left uninsulated wires in such close proximity to each other and to the wood material of which the house was constructed that it caused fire to ignite and destroy the building. By answer, the allegations of negligence were denied, and it affirmatively pleaded that its agents and employees had no authority to do house wiring for it, and had been notified and warned not to do wiring for any of its customers. The trial below resulted in a verdict for appellees for $5,500, and appellant has appealed.

It is insisted for appellant that under the facts it was entitled to a directed verdict at the close of the evidence, and that the trial court erred in overruling its motion for same. Appellant company established beyond question that it had forbidden any of its employees or agents to do wiring for its customers. That had been found necessary to avoid the very situation which has arisen in this action: that is, being sued for damages in case of fire upon the theory that the wiring done by it was defective or negligently done. The occasion for a change in the wiring within appellees' residence was the discovery by the manager for appellant corporation in Elkhorn City that some of the lights of this residence obtained their electric current ahead of the meter. When this was discovered, appellees were notified that the wiring would have to be changed so that the current consumed by these lights would register on the meter. The agent of appellant who made this discovery had general supervision of its business in that territory, and he testified, and appellees admit, that, when they tried to procure him to make the necessary changes, he informed them that his company did not permit him to do that kind of work. Afterwards another of appellant's employees, the meter man, whose duties required him to install and inspect and read the meters in the residences of its customers, called at the home of appellees and discovered that the wiring of the house had not been changed so as to make all of the lights register the current consumed on the meter. This

agent testified, and appellees admitted, that he also called their attention to the fact that the wiring had not been changed, and instructed appellees that that must be done. He testified that he informed appellees that his company forbade him to do that character of work when they proposed that he make the necessary changes in the wiring system, and we do not find anywhere in the record that this testimony was ever denied. The meter man testified that after appellees had spoken of the fact that they were unable to procure any skilled electrician to make this change in the wiring he suggested that he would show them how to make the changes, and that he and appellee W. M. Ratliff went into the attic of the dwelling house, and the latter, under his direction, made the necessary changes so that current to all of the lights would register on the meter. According to his testimony, though appellee Ratliff did the work, it was properly done, and his connection with the transaction was purely for accommodation, and appellee understood such to be the fact.

W. M. Ratliff is the only one of the three appellees who testified. He appears to have been living in the dwelling house at the time, and his version of what occurred when the change in the wiring was made differs only slightly from that given by appellant's meter man. He testified that the meter man made the changes, but he does not testify that any charges were made for this service, and he does not deny that the meter man informed him that he could not do this work for his company. His testimony as to how the changes were made would tend to establish that the new connections were made in a negligent manner, in that the insulation was removed and the wires left loose and unfastened and in such condition that the exposed wires might come in contact with each other and the wood material of the house and ignite a fire. This change in the wiring was done some three months before the house was burned.

In this state of case it is extremely difficult to find any negligence upon the part of appellant or its agents acting within the scope or apparent scope of their authority for which it is answerable. The evidence is all one way that appellant had forbidden its employees to engage in house wiring for it or for themselves. The limitation of the authority of its employees in this particular was brought home to appellee W. M. Ratliff, the only one of the appellees who testified, by appellant's lineman and general manager in this neighborhood, who

told him that he could not do this work; Ratliff admits this to be the fact. The meter man testified that he also told Ratliff that the company forbade him to do this character of work, and, although appellee was introduced in his own behalf in rebuttal after this testimony, he did not deny this fact. No charge was made for whatever service was rendered by the meter man in making the change in the wiring of the house. This fact lends much corroboration to the testimony of the meter man that what he did was merely his personal act for the accommodation of Mr. Ratliff, and was so understood by the latter, and was in no sense of the word action upon his part for and on behalf of his employer, and that that fact was fully understood by Mr. Ratliff. The record establishing that the act of the meter man, appellant's agent, in making the change in the wiring, was entirely beyond the scope of his authority, and the testimony that knowledge of this limitation of authority upon his part was known to appellees being undisputed, there would seem to be no way to conclude that appellant may be made answerable for any damages that may have resulted to appellees from the negligent and defective manner in which the wiring within their residence was changed.

Appellees rely upon the principle announced by this court in Smith's Administratrix v. Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164, to the effect that although a company engaged in generating or distributing electric current does not own the system of wiring and fixtures within private dwelling houses and is not charged with the duty to inspect them, yet if, with knowledge that they are defective, it sends its electric current into a building, it is liable for the damages that ensue. Other authorities sustaining that principle are cited, and we agree that the principle is correct and that this court is committed to it.

The argument is that appellant's agent was present, according to his own testimony, when the change in the system of wiring was made, and consequently acquired knowledge of the defective and negligent way in which it was done. It is insisted that thereby appellant acquired knowledge of the defective condition of the wiring in this house and made itself liable when it sent its current into the house over the defective wiring. Whether under the facts hereof that would be true or not, we find is unnecessary to determine, because the petition herein

specified the negligence and did not rely upon appellant's negligently turning electric current into this house with knowledge of the defects in its wiring system. The sole ground of negligence pleaded and relied upon in appellees' petition was that appellant changed the wiring system, and in doing so negligently cut and spliced the electric wires and left them uninsulated and exposed, and thereby caused the fire.

For the reasons indicated, the court is constrained to the view that appellant's motion for a peremptory instruction should have prevailed, and that the trial court erred in not sustaining it.

Reversed and remanded for a new trial in conformity with this opinion.