## Ratliff et al. v. Kentucky & West Virginia Power Company.

### (And Four Other Cases.)

(Decided December 20, 1929.)

MOORE & CHILDERS and F. M. DRAKE for appellants.

HARMAN, FRANCIS & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

These five appeals are to be considered on one bill of exceptions. This is the second appeal of the Ratliff

case. A full statement of the facts will be found in the opinion on the first appeal reported in 221 Ky. 517, 299 S. W. 166. The house of Ratliff was burned on June 5, 1925, and the houses of other appellants were burned at the same time by the spread of the fire from the Ratliff house. It is claimed that the fire was caused by defects in the wiring inside the house, the defects having been brought about through certain changes in the wiring made by one Slim Ledford, a meterman. It was held in the former opinion that Ledford was acting without the scope of his employment and authority in changing the wires, and for that reason appellee could not be held responsible for any damages that may have resulted from his negligence.

An amended petition was filed after the cause was remanded to the circuit court, which alleged that the appellee had notice of the dangerous condition in Ratliff's house, and that with such notice it continued to furnish electricity over the defective wires. An issue was made, and the case was tried on the cause of action found in the amended petition.

Evidence was introduced in an attempt to establish that appellee had notice of the defective condition of the wiring some time prior to the fire. It is insisted that notice to the company was established through evidence that Ledford, the meterman, made the changes and knew of the defective condition of the wiring; or, if that was not sufficient, it is insisted that Miles Coleman, a lineman for appellee, had notice, and that was notice to the company; or that, if notice to these two employees was not sufficient, there is a circumstance from which notice may be inferred, and that is that appellee had been sending letters to appellant Ratliff, advising him that he must have his lights placed behind his meter, and that after the change was made no more letters to this effect were sent. It is argued that the sending of the letters until the change was made and stopping them immediately thereafter is proof that appellee had been advised the change had been made. Assuming that this circumstance established that the company had notice of the change, still it did not establish that the company had any notice of the defective wiring. It is suggested, however, that the circumstance showed that Ledford had authority to make the change. We cannot agree with that, as it is well established that he did not have the authority, and, although the company may have known that he made the

change in the wiring without authority, this was not sufficient to show that the company knew of the defective wiring.

Undoubtedly Ledford knew that the wiring was defective. He made the changes, and he left the wires unwrapped. Realizing that they were probably dangerous in that condition, he requested Coleman to furnish tape with which to insulate joints, or naked places, in the wire within Ratliff's house. Notice to an agent of a corporation is not notice to his principal, where the notice relates to some matter over which the agent has no control, and with which his duties are not connected and when they relate to matters over which he has no authority. American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 997; Fletcher on Corporations, vol. 4, pages 3437, 3439; Corrigan v. Bobbs-Merill Co., 228 N. Y. 58, 126 N. E. 260, 10 A. L. R. 662.

In the case of Smith's Adm'x v. Middlesboro Electric Light Co., 164 Ky. 46, 174 S. W. 773, 780, Ann. Cas. 1917A, 1164, this court held that an electric light company should not be responsible for injury received by persons arising solely from the defects in the wiring and appliances used for electric lighting purposes within their own houses, and which are owned by them, and over which they have entire control, and where the only connection between the company and persons using the lights is a contract between them and the company for the company to connect its system with the inside wires and deliver current for their use, in the absence of knowledge on the part of the company of the defective condition of the wiring and appliances of such parties. After stating the general rule the court said: "Although such inside wiring and appliances were defective, this would not excuse the company for injuries arising from its sending into the house dangerous current of electricity, and without which the defects in the inside wiring and apparatus would have been harmless."

Under the authority of that opinion, if appellee had notice that the wiring in the house of Ratliff was defective, and with such notice it sent electricity over the defective wires and thereby caused the fire, it would be responsible for the resulting damages. But it was held by this court that Ledford was acting beyond the scope of his employment in changing the wires, and, if that is

true, notice to him of the defective condition of the wires was not notice to the company, and it cannot be held that the company knew of the defective condition of the wires on account of the notice that Ledford had of that condition. It was held in the case of Aurentz v. Nierman, 76 Ind. App. 669, 131 N. E. 832, that a corporation supplying a current of electricity to fixtures in a building over which it had no control, and which it was not authorized to repair, after acquiring knowledge by inspecting that the wiring in the fixtures was defective and dangerous, was liable for the death of a person caused by his coming in contact therewith. The same rule has been announced in the case of Alabama Power Co. v. Jones, 212 Ala. 206, 101 So. 898; International Electric Co. v. Shancez (Tex. Civ. App.) 203 S. W. 1164. Our jurisdiction, therefore, is in line with other jurisdictions in holding that an electric company with notice of defective wiring inside of the building over which it has no control is responsible for resulting injuries for sending an electric current through the defective appliances. With notice to Ledford eliminated it remains to determine whether notice to Coleman was notice to the company.

Coleman received notice from Ledford that the wiring was defective, whereupon Coleman procured tape with which to insulate the joints and naked places on the wire. This was the next day after the changes were made. Coleman gave the tape to Ratliff. Ratliff accepted it, but he testified that he told Coleman that he would not tape the wires. This is denied by Coleman. Coleman was the lineman who patrolled the high voltage wires of appellee that passed through the town of Elkhorn City where the fire occurred. He also prepared contracts for the customers and received deposits which he transmitted to the company. He testified that he had nothing to do with the wiring inside of the houses. He knew nothing about the condition of the wiring in Ratliff's house other than what he was told by Ledford. It is argued by counsel for appellant that it was the duty of both Ledford and Coleman to keep a lookout for such conditions as were found in Ratliff's house and to remedy them, or, if not remedied, they were bound to discontinue service. We find nothing in the evidence which would tend to show that it was the duty of either Coleman or Ledford to remedy a defect of wiring inside the houses. It appears, from the evidence, that appellee did

not direct either Coleman or Ledford to do anything about the wiring in any houses. Coleman testified that he had no such authority, but admitted that he had changed the wiring in some of the houses, but he said he did it without any authority so to do from the company, and that he was acting beyond the scope of his employment in so doing. He was paid by the owner of the property for making some of the changes. If Ledford was acting beyond the scope of his employment, and that question has been finally disposed of by the former opinion in this court, we fail to see how it could be held that Coleman was acting within the scope of his employment when he received notice of the defective condition of the wiring and furnished the tape to Ratliff.

In sustaining the motion for a peremptory instruction the trial court suggested that, while Ratliff may have told Coleman that he would not tape the wires, yet Coleman had the right to assume as he accepted the tape that he would have some one else to do it. Undoubtedly it was the duty of Ratliff to have the wires taped. Counsel for appellant criticized rather strongly the statement of the trial court, but we think there is much force in what he said. Ratliff does not claim that he did not have ordinary intelligence. He knew that the wires had been left exposed, and he knew when the tape was given to him that it was intended that it should be used to insulate the wires. It seems to the court that, if it should be held that the company had notice of the situation, it had the right to assume that Ratliff would have the defects remedied when he was requested to do so, and the material with which to insulate the wires had been given him, and that it was not unreasonable for the company to believe that the defects had been remedied, as nothing more had been said about the matter.

Our conclusion is that notice to Ratliff and Coleman of the defective condition of the wiring was not notice to the company, and that there is nothing in the record which shows that the company had knowledge of the defective condition of the wiring. This renders it unnecessary to discuss whether the evidence was sufficient to show that the fire was caused by the defective condition of the wiring.

Judgment affirmed.