## Holsclaw's Adm'r v. Louisville Gas & Electric Company et al.

(Decided Nov. 24, 1936.)

LAWRENCE S. GRAUMAN for appellant.

WOODWARD, DAWSON & HOBSON and LEE ROY CURTIS for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming in part and reversing in part.

In May, 1934, and some time previous thereto, Victor Koestel, now deceased, owned a two-story brick building located on the north side of Jefferson street in the city of Louisville, Ky., designated as No. 411 East Jefferson street. The second floor consisted of about five rooms, which were occupied and used by Josephine Holsclaw and members of her family.

In April, 1934, Koestel decided to remodel the ground floor of the building so as to be used as a filling station, and in order to provide space between the sidewalk and outer wall of the building for gas pumps and motor vehicles it was necessary to tear down the front wall and move it back about 20 feet. Koestel contracted with one Edward J. Smidt to remodel the building and contracted with Tony Fontana, a plumber, to move the gas meter from its then location back about 20 feet, which was necessary because of the moving of the front wall of the building. At that time the gas meter was located under the second floor stairway. A 2-inch service gas pipe belonging to the Louisville Gas & Electric Company entered Koestel's property and ran back some distance and then up to the second floor so as to supply the living apartments of Mrs. Holsclaw with gas for the usual household purposes. The moving of the meter necessitated the extension of the 2-inch service pipe about 23 feet to the new location of the meter. At the direction of Koestel, Fontana and his assistant, Louis Eyl, who was also a plumber, reduced the service pipe from that point back to the place where the meter was moved, by connecting thereto a 1¼-inch pipe. At the point of intersection of the two pipes the plumbers placed a bushing to prevent leak or the escaping of gas. After the gas fixtures were installed, which was on April 11, 1934, Fontana made a test of it, but found no leaks and it appeared to be in a safe and workable condition, and he left the premises and had no further connection with the remodeling of the building.

While the work of remodeling the building was still in progress, at about 1:30 or 2 o'clock p. m. on May 3, 1934, as a result of escaping gas, an explosion occurred in the building, completely demolishing it, which resulted in the death of Mrs. Holsclaw and Victor Koestel. Koestel left a will in which his wife, Frieda Koestel, was named executrix of his estate and she qualified as such. Edward C. Langan was appointed and qualified as administrator of the estate of Josephine Holsclaw and he brought this suit against the executrix of the estate of Koestel and his estate, and the Louisville Gas & Electric Company, a corporation, hereinafter called the Gas Company, to recover of them for the death of Mrs. Holsclaw.

The suit was predicated upon the theory that the

death of Mrs. Holsclaw was caused by the combined or concurrent negligence of the deceased, Victor Koestel, and the Gas Company. It is alleged that Koestel knew or by the exercise of ordinary care could have known of the escaping gas and unsafe condition of the gas fixtures in time to have had same repaired and thereby avoid the explosion which resulted in the death of Mrs. Holsclaw; and that the Gas Company knew or by the exercise of ordinary care could have known of the unsafe and dangerous condition of its 2-inch service pipe which Fontana had extended into the Koestel building and which fed the 1¼-inch service pipe which conducted gas from the meter or its intersection with the 2-inch pipe to the apartments of Mrs. Holsclaw, and that inasmuch as the Gas Company had accepted and was using the 2-inch pipe as extended by Fontana, the plumber for Koestel, and had stored its gas therein for the purpose of distributing it in the building, it was responsible for the unsafe condition of its said service pipe.

By subsequent pleadings the issues were made and on a trial of the case before a jury, at the close of the evidence for the plaintiff, the court peremptorily instructed the jury to find a verdict for the estate of Koestel, on the theory that plaintiff had shown no negligence on the part of Koestel. The trial was proceeded with against the Gas Company, and after both parties had completed their testimony the case was submitted to the jury and it returned a verdict in favor of the Gas Company. Motion and grounds for a new trial were filed on both branches of the case which were overruled and judgment was entered dismissing plaintiff's petition. Plaintiff appeals.

In appellant's motion and grounds for a new trial, various alleged errors are set out, but all of them are not insisted on in his brief. We will consider only those discussed in the brief, viz., (1) the court erred in rejecting competent testimony offered by the plaintiff, (2) the court erred in refusing to give instructions offered by plaintiff, and (3) the instructions given by the court on its own motion are erroneous.

The alleged competent evidence offered by plaintiff and rejected by the court relates to the testimony of Emil Metz, who was the meter reader for the defendant,

Gas Company. Metz testified that on April 14, 1934, he made a reading of the meter which had been reinstalled in the building of Koestel (which was three days after its installation and more than two weeks before the explosion of the building) and that he noticed the service pipe had been extended and the meter moved and reinstalled, but he made no report of his observations to his employer, Gas Company. He said he did not notice anything wrong with the meter or the gas pipe, but if he had observed any trouble with it he would have reported same* to the company, but as his duties extended no further than that of a meter reader he made no examination with a view of ascertaining whether or not there were any leaks or other trouble with the line extended or the meter connections. At the conclusion of the evidence the court instructed or admonished the jury not to consider the evidence of Metz on the ground that his duties extended no further than that of meter reader and therefore any* change in the meter or any evidence relative to the change that he may have known of was not notice to the Gas Company.

The argument is that Metz being an employee and agent of the Gas Company, notice to him of the extension of the pipe and reinstallation of the meter was notice to the Gas Company and it then became the duty of the defendant Gas Company to have an inspection made of its service pipe, meter connections, etc.

We find ourselves unable to agree that notice to Metz was notice to the Gas Company. It is established by the uncontradicted evidence of Metz and others that Metz' duty extended no further than that of a meter reader. In Kentucky & West Virginia Power Co. v. Ratliff, 221 Ky. 517, 299 S. W. 166 and Ratliff v. Kentucky & West Virginia Power Co., 232 Ky. 262, 22 S. W. (2d) 620, which was twice appealed to this court, the facts are very similar to those in the present case. One Ledford, a meter man for the power company, without the authority of his employer, changed the wiring in the house of Ratliff. He left certain parts of the wiring uninsulated or naked, and the facts disclosed that he knew that the wiring was defective. A fire resulted and destroyed the building. On the first appeal, it was held that the company was not liable for the reason that the meter man was acting without the scope of his authority and employment in changing the wires.

Upon a return of the case to the circuit court, certain amendments were filed alleging that notice to the company was established through evidence that Ledford, the meterman who made the changes, knew of the defective conditions of the wiring and that another employee of the company, a lineman, also had notice of the defective conditions of the wiring and notice to him was notice to the company, and, further, that there were circumstances from which notice to the company might be inferred, in that, the company had been sending letters to Ratliff advising him to have his lights placed behind the meter, and after the change was made by Ledford no more letters were received, and this established notice to the company. The circuit court peremptorily instructed the jury to find a verdict for the power company and on the second appeal the case was again affirmed on the ground that notice to Ledford as a meter reader for the company, and to Coleman as a lineman, was not notice to the company because it related to matters over which they had no control and with which their duties were not connected. Citing American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977; Fletcher on Corporations, vol. 4, pages 34-39; Corrigan v. Bobbs-Merrill Co., 228 N. Y. 58, 126 N. E. 260, 10 A. L. R. 662.

Also in City of Danville v. Vanarsdale, 243 Ky. 338, 48 S. W. (2d) 5, it was held that knowledge of the city waterworks' manager and employees could not be imputed to the city, since notice to the city must be to one of whom, or on whom in connection with others, is imposed the duty to maintain the streets and sidewalks in a reasonably safe condition for travel, and none of the waterworks' employees or its managing officers had any duty to perform with reference to the safety of the city streets.

The evidence in this case, viewed in the light of the authorities cited above, and many others which might be cited, impels us to the conclusion that notice to Metz was not notice to the Gas Company and the court properly excluded same from the consideration of the jury.

It is shown by the undisputed evidence that when the Gas Company learned of the explosion it made an immediate investigation to ascertain the cause of it. The stop box was examined and found to be in good

condition, and then it was suspected that there might be a break in the service pipe running from the stop box back to the meter. They dug down to the service pipe and when they had reached a point 11 feet and 3 inches inside the property line of Koestel at the point where the ends of the 1¼-inch pipe owned by Koestel had been connected to the 2-inch service pipe, they found the ends of the pipes were open through which gas had escaped.

We now come to the question of notice to the Gas Company. It is shown by the evidence of A. M. Zenowitz that about 7 o'clock in the morning of the explosion when he opened the door of his place of business, at No. 409 East Jefferson street, adjoining the house of Koestel, he smelled a strong odor of gas and had smelled gas there several times before that but had not paid much attention to it; that by 9 o'clock that morning the odor became so strong that one of Zenowitz's employees became sick and was taken to his home. A little later in the morning Zenowitz "went over to see Mr. Koestel" (but did not state where Mr. Koestel was) and told him that there was something wrong with the gas lines. The odor of gas continued to grow stronger and Zenowitz called the Gas Company. After this he again told Mr. Koestel that the gas was leaking and Koestel told him that he had called Mr. Fontana, the plumber. Zenowitz further testified that when he called the Gas Company the operator who first answered him referred him to another department, or switched him over to another department, and the latter department switched him over to another department. This was two or three hours before the explosion occurred.

The employees of the Gas Company testified that they received no calls or notices of any gas troubles from any one on that day until after the explosion had occurred. Aside from the evidence of Zenowitz, there is no evidence whatever tending to show that the Gas Company had any notice of any trouble with the gas. The Gas Company introduced evidence tending to impeach the credibility of the evidence of Zenowitz by showing that he had twice been convicted of a felony. It was also shown that he had a claim pending against the Gas Company.

The question of notice to the Gas Company was

submitted to the jury and, it being the judge of the credibility of the witnesses and the weight to be given the evidence and having found for the defendant, we are not authorized to disturb its verdict.

It is next insisted that instruction No. 1 given by the court on its own motion is erroneous. The objection urged to the instruction is that it required the Gas Company to exercise ordinary care to stop the leak or cut off the gas at the service connection supplying the pipes where the gas was leaking, if the Gas Company, its agents, or servants, or any of them whose duty it was, acting in the scope of their employment to receive notice of or correct defects in the gas service furnished by the company, were notified that gas was escaping on or adjacent to the premises referred to in the evidence. If there were any evidence tending to show that the leakage was in the Gas Company's pipe instead of in the connection made by Koestel on his own premises, the objections urged to the instructions might be well taken. But it must not be overlooked that it is shown by undisputed evidence that the defect or leak was found to be under the building on the private premises of Koestel in the line constructed by his plumber. There is no evidence that there was any trouble in the Gas Company's service line. It is the well-settled rule that a gas company is under no duty to inspect the gas lines or connections owned by others, and its duty extends no further than to exercise ordinary care to see that its own lines are in proper condition, unless it has actual notice that there is a leakage or other trouble in connecting lines owned by others, then in that event it becomes its duty to cut off the gas or take other proper action to prevent danger to person or property. Smith's Adm'x v. Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164.

It will be seen that the Gas Company was not responsible for the defect in the line extended into the building and premises of Koestel unless it had actual notice of same. We think the instruction given by the court correctly presented the law and issues involved under the facts of this case.

The further insistence is that the court erred in rejecting the instructions offered by the plaintiff. But since we have concluded that the instructions given by

the court are correct, it becomes unnecessary to discuss the offered instructions.

Having concluded that the instructions given by the court are correct and the evidence is sufficient to support the verdict of the jury, it follows, therefore, that the judgment in favor of the Gas Company must be affirmed.

We now come to a consideration of the action of the court in peremptorily instructing the jury to find a verdict in favor of Koestel's estate. It is for defendants the general rule that on a motion for a peremptory the evidence will be viewed in the light most favorable to the plaintiff, and if there is any evidence tending to support the plaintiff's cause of action, a directed verdict in favor of defendant is improper. It is shown by a number of witnesses that the odor of gas had been noticed in the building and premises of Koestel for some few days before the explosion, but it does not appear that the odor was such as attracted much attention or to cause any alarm until the morning of May 3, a few hours before the explosion occurred. But it is not shown that Koestel was at the same place in the building where the other witnesses were who testified that they had smelled gas, or that he had an opportunity to do so.

Zenowitz testified that he notified Koestel at about 11 o'clock that there was trouble with the gas and Fontana, the plumber, testified that he was called between 1 and 1:30 o'clock. The evidence of Zenowitz and Fontana is not contradicted except that Louis Koestel, the son of the deceased, Victor Koestel, testified that he told his father about the odor of the gas at about 12 o'clock and he immediately called Fontana. If the evidence of Zenowitz and Fontana is to be believed, approximately two hours had elapsed between the time Zenowitz notified Koestel and when Koestel called the plumber.

The rule is that a peremptory instruction is not authorized unless, after admitting the testimony offered by plaintiff and every reasonable inference to be deduced from the facts proven to be true, and that reasonable minds could arrive at but one conclusion therefrom, then it is the duty of the court to give the peremptory instruction, but, if not so, then it is the duty of the court to submit the issue to the jury under proper instruction.

Kentucky Traction & Terminal Co. v. Roman's Guardian, 232 Ky. 285, 23 S. W. (2d) 272; New York Life Insurance Company v. Dean, 226 Ky. 597, 11 S. W. (2d) 417; Kentucky Traction & Terminal Co. v. Brawner, 208 Ky. 310, 270 S. W. 825.

It is our view that under the direct evidence and attendant circumstances of this case reasonable minds might differ as to whether or not Koestel exercised ordinary care in calling the plumber or taking other precautions to have the gas trouble remedied after he was notified of the escaping gas.

It is our conclusion, therefore, that the court erred in directing a verdict in favor of the executrix of Koestel's estate.

For reasons stated, the judgment is reversed as to Koestel's estate and affirmed as to the Louisville Gas & Electric Company, and remanded for proceedings consistent with this opinion.