# Wilson Gas Utilities Corporation v. Baker.

Jan. 17, 1939.

J. WOODFORD HOWARD, W. P. MAYO and CARL P. KING for appellant.

NAPIER & NAPIER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This appeal seeks a reversal of a judgment rendered against the appellant, Wilson Gas Utilities Corporation, in the Perry Circuit Court, and in favor of the appellee, Dr. Boyd B. Baker, for damages for personal injuries suffered by him in a gas explosion occurring in his offices, alleged to have been caused by the negligence of defendant in turning gas into the building when having knowledge of the defective or uncapped condition of the gas pipe in Dr. Baker's office.

Upon trial of the cause, the jury after hearing the evidence, instructions of the court and argument of counsel, returned a verdict for plaintiff, awarding him damages in the sum of $10,000.

Challenging the propriety of this verdict and judgment entered thereon, appellant seeks its reversal by an assignment of more than twenty errors alleged committed upon the trial.

The facts as disclosed by the record are that Dr. Baker, at the time of the alleged explosion in his offices on the morning of October 11, 1935, was occupying and using as such two rooms on the second floor of the combined office and apartment building, located on Main Street in the City of Hazard, Kentucky, which belonged to Mrs. Kate Johnson and her daughter, Mrs. Anna Jones, from whom he had rented these rooms. Mrs. Johnson and Mrs. Jones had owned the building for more than twenty years.

It also appears that the City of Hazard had, in April, 1929, sold and granted to J. T. Justice a twenty

year franchise to construct and maintain a system of pipe lines for the conveyance, distribution and sale of gas, under the terms and restrictions therein stated, and that this gas system had been duly constructed and since operated by its successive owners in the city.

Among the restrictions set out in the franchise and under which appellant claims it was not required to inspect the gas pipes, constructed and installed in the city's buildings by their owners, is the following:

> "The Company shall not be required to bear the expense of making service connection from their main lines located at the curb or in the alley, as the case may be, to the property of the consumer, but shall have the right at the time such connection is being made to thoroughly inspect the service line and meter. Then and thereafter the Company shall at all times have the right to inspect such service lines, meters and to read and repair the same when necessary but shall not be obligated to do so."

Pursuant to such provision and others contained in the franchise, made for and on behalf of the consumers of gas in the City of Hazard, the gas company had only installed pipe from its main lines to the property line where the gas was turned into the meter of and accepted by the consumer. Further, the property owners were required to pipe their own buildings and extend service lines to the metering point, where gas was received for the entire building. The gas company furnished the piping from its main line up to the meter installed by the consumer, but beyond the metering point it appears the company exercised no control. Such, it is alleged, is now and has been the customary practice of all parties affected by this franchise contract.

The owners of the Johnson building, wherein Dr. Baker had his offices at the time of the explosion, had it piped as stated, long before the sale and conveyance to the appellant of the franchise and gas system in January, 1934, by its predecessor, the Kengreen Gas Utilities Corporation.

On October 11, 1935, there occurred an explosion in one of the office rooms in the Johnson building then leased and occupied by Dr. Baker, who claimed it was caused by the gas having that morning been negligently turned into the building by the appellant without first

inspecting or repairing the condition of its gas pipes, although plaintiff testifies the company then had notice of there being a defective or uncapped gas pipe in his office, and due to which, he was, by the resulting explosion of the gas escaping through it, seriously and permanently injured.

Thereupon, this action was brought by Dr. Baker against both the owners of the building and the gas company to recover damages for his alleged injuries caused by the explosion.

By the petition the above stated facts were in substance alleged and, further, that "many months prior to the 11th day of October, 1935, the defendants, Anna M. Jones and Kate F. Johnson, had installed in the building * * * certain gas pipes for conducting gas to the tenants in said building, and that said pipes had been connected with the main gas lines of the defendant, Wilson Gas Utilities Corporation, but that several weeks before the 11th of October, 1935, the tenants in said building had ceased to use gas," when the gas company had disconnected the gas from the meter in said building, but on the above date it undertook, without first inspecting the gas lines in the building, to turn on the gas and connect the lines in the building with its main lines; that neither of the defendants had used ordinary or any care in inspecting their said lines but had negligently and carelessly left uncapped and open in plaintiff's rooms one of said gas lines, through which gas escaped when it was cut into the building; and that this gas, thus turned on and escaping through the uncapped pipe, accumulated in his rooms with the result that when a patient in the office lighted a cigarette, the gas caught fire and exploded, thereby inflicting the various alleged severe injuries and damages upon the plaintiff, for which he asked in his petition to recover against defendants, sums aggregating $27,000.

A general demurrer to this pleading was sustained as to plaintiff's lessors, the defendants, Mrs. Johnson and Jones, but that of the gas company was overruled. The company's answer was thereupon filed whereby it traversed all the material allegations of the petition.

An amended petition was then filed, alleging in part that:

"The defendants named in the * * * petition herein

negligently and carelessly failed to inspect the pipe lines extending into plaintiff's office room * * *; that these defendants negligently and carelessly, and without exercise of ordinary care, turned its flow of gas into said building without defendants inspecting the gas pipe line extending into plaintiff's office room," and that "these defendants knew or could have known in the exercise of ordinary care, before turning its gas into said pipe line extending into his said office room, that the pipe line extending into his office room was uncapped."

An answer was filed to the petition as amended, first traversing its material allegations and by a second paragraph affirmatively pleading plaintiff's contributory negligence.

Also the general demurrer of the defendant building owners, having been extended to the petition as amended, was sustained, when by agreement it was ordered that all affirmative matter not controverted in the pleadings be controverted of record.

Issues were joined by these pleadings.

In support of plaintiff's claim, his testimony and that of his witnesses is to the effect that he leased as offices and moved into the two rooms in the Johnson building on October 1, 1935, just after they had been vacated by former tenants who had used the rooms for living quarters; that they had maintained in one of the rooms a gas range, which, upon their vacating these rooms, had been disconnected from the gas pipe, which was left open and uncapped; and that such was the pipe's uncapped condition when Dr. Baker moved into the rooms.

Plaintiff testifies that within two or three days after moving into the offices he noticed the uncapped pipe, when he started up to the defendant gas company's office to notify them that there was no cap on the pipe; that he met Mr. King and told him there was a gas pipe in his room with no cap on it, when Mr. King told him that "there wasn't any gas * * * in that building anyway" and that "he would send down and have it looked after"; that this was not done and that about seven days thereafter the gas explosion occurred in the office.

It is admitted that an explosion took place in Dr. Baker's office on the morning of October 11, 1935, while

he was treating a patient, who struck a match to light a cigarette, when instantaneously the explosion occurred, flooding the entire office with flame.

There is abundant evidence that Dr. Baker was so seriously burned and injured by the explosion that he was required to undergo a long period of hospitalization and medical treatment, by reason of which he suffered two months' loss of time from his practice; and, further, that he was by it permanently injured and his ability to practice his profession and earning capacity seriously impaired, for all of which he sought recovery of damages against defendant, as above stated.

Further, plaintiff's witness, C. A. Noble, testified that he had rented an apartment in the Johnson building just prior to the explosion; that there was no gas turned on in the building at that time; that on the morning of October 11, he went up to the gas company's office "and saw Mr. King, Carl King, and his stenographer and repair man or service man was there, George Brooks." He further testified as follows:

"I made my deposit and it was then about 10:30 in the morning. I had been moving my apartment all during the day, working at it myself and I was pretty dirty and wanted to wash up. I wanted to get to work and I asked them how soon they could have heat down there and they told me right away and I went on back. George Brooks, Mr. Brooks, came down and came into my office * * * and he said he had come down to cut the gas in and was going down to cut it in downstairs. * * *. I told him to look around back there, that the gas hadn't been on and I was afraid of gas anyway, * * * and see that everything was all right. He went back through the building to the rear and down toward where Dr. Baker's offices were and came back and said that everything was all right and that he was going down to cut it in. He went downstairs and in a few minutes he came back upstairs and said, 'Now, you can heat your water, the gas is on.' * * * He went back there and lit the gas and I told him that it looked all right to me and he walked back out. In a few minutes * * * I thought I smelled some gas fumes."

This Mr. Carl King, when testifying for appellant, states that he is not the agent of the company and holds

no position with it, except that of legal adviser to the company, although he does not deny, as testified by Noble, that the latter came to him on the morning of October 11 at the company's office or place of business and requested that he have the gas cut into his apartment, which he told him would be done at once and thereupon sent the company's service man, Brooks, up to the Johnson building, who executed his instructions by cutting in the gas.

Other of plaintiff's witnesses testified that Mr. King was the manager of the company's gas plant in Hazard, though they do not attempt to testify as to any facts as to his acting in such capacity, which would serve to render their testimony given as being other than mere conclusions.

It is undenied, and in fact so stated by Mr. King, that he owns a controlling interest in the gas company, and, while he states that he is only its legal adviser, there is no evidence as to anyone other than Mr. King being the Hazard manager of the company's business.

Mr. King further testified that the plumbing and piping of buildings, for receiving gas from the appellant, beyond the meter point is furnished by the customer and that the gas company, in furnishing gas to customers in the City of Hazard, never looked after the fixing of pipes or their connections or fittings beyond the meter point; that in the event of breaks in pipes and repair thereof being required beyond the metering point, the property owner or his agent looked after them; and that the company had strict rules against its employees taking plumbing contracts.

The court, upon the conclusion of the evidence, gave four instructions to the jury directing them as to the law of the case applicable to the evidence heard, the first two of which, challenged as erroneous, are as follows:

"1. It was the duty of the defendant, Wilson Gas Utilities Corporation, through and by its agent or servant so doing, at the time and upon the occasion mentioned in the evidence, and before releasing gas into the pipes leading into the Johnson Building mentioned in the evidence, to use and exercise such a degree of care as the dangerous character of the gas and the attending circumstances would demand of an ordinary person engaged in the same

kind of work, to prevent the escape of gas from any unprotected openings in the gas pipes after the gas had gone into the pipes in the building.

"2. If you shall believe from the evidence that the defendant through and by its agents, servants and employees, released and turned gas into the pipes leading into the Johnson Building from its pipes, and that the gas then flowed through and into a pipe leading into the office of the plaintiff and emerged therefrom into his office through an unprotected and unclosed opening at the end of the pipe, and that before and in so releasing the gas into the said building the defendant, through and by its servants and employees, failed to observe and perform the duty required and set out in instruction No. 1 above, and that by reason of such failure, if any, and as a direct and proximate result thereof the gas in the office of the plaintiff was caused to ignite and explode and to burn and injure the person of the plaintiff, then you will find for the plaintiff such a sum in damages as you may believe from the evidence will fairly and justly compensate him for such physical pain and suffering, if any, endured by him on account thereof, and for any permanent impairment of his power to earn money, if any, directly resulting from said injuries; not to exceed, however, the sum of Twenty-five Thousand Dollars.

"Unless you so believe, you will find for the defendant."

The appellant gas company assigns many grounds of error committed upon the trial, for which it is entitled to a reversal of the judgment.

We feel it, however, unnecessary to here enter into a discussion of any of these grounds assigned, except the error complained of with respect to the given instructions, Nos. 1 and 2, as to which we have reached the conclusion that same are so prejudicially erroneous as to entitle appellant to a reversal of the judgment.

The first instruction we regard as erroneous in laying down the legal rule that it was the duty of the defendant, upon the occasion and under the circumstances mentioned in the evidence, before releasing gas into the Johnson Building, to exercise such care as the danger-

ous character of the gas demanded of, "an ordinary person engaged in the same kind of work, to prevent escape of gas from any unprotected openings in the gas pipes after the gas had gone into the pipes in the building.'"

Such responsibility or obligation was not imposed upon the gas company by the terms of its franchise with the city, under which it operated its gas business, which expressly provided, as stated supra, that:

"The Company shall at all times have the right to inspect such service lines, meters and to read and repair the same when necessary, but shall not be obligated to do so."

Further, it is admitted that the defective gas pipe, from which it is claimed the gas here escaped which caused the explosion, inflicting the injuries complained of upon the appellee, was installed in the building by its owners, not by the gas company, upon whom the duty of their inspection and repair was imposed.

The applicable rule of law in such case is well stated in the case of Holsclaw's Adm'r v. Louisville Gas & Electric Company, 267 Ky. 56, 100 S. W. (2d) 805, as follows [page 808]:

"If there were any evidence tending to show that the leakage was in the Gas Company's pipe instead of in the connection made by Koestel on his own premises, the objections urged to the instructions might be well taken. But it must not be overlooked that it is shown by undisputed evidence that the defect or leak was found to be under the building on the private premises of Koestel in the line constructed by his plumber. There is no evidence that there was any trouble in the Gas Company's service line. It is the well-settled rule that a gas company is under no duty to inspect the gas lines or connections owned by others, and its duty extends no further than to exercise ordinary care to see that its own lines are in proper condition, unless it has actual notice that there is a leakage or other trouble in connecting lines owned by others, then in that event it becomes its duty to cut off the gas or take other proper action to prevent danger to person or property. Smith's Adm'x v. Middlesboro Electric Company, 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164."

See also the further cases, declaring and embodying by appropriate instructions the same rule therein, of Kentucky & West Virginia Power Company v. Ratliff, 221 Ky. 517, 299 S. W. 166; Kentucky Utilities Company v. Sutton's Adm'r, 237 Ky. 772, 36 S. W. (2d) 380.

In the latter case, in holding the electric company that supplied the electric current not responsible, we quoted with approval from the Smith Case, supra, as follows [page 383]:

> "The just rule seems to be that the electric light company should not be responsible for injuries received by persons arising solely from the defects in the wiring and appliances used for electric lighting purposes within their own houses, and which are owned by them, and over which they have entire control, and where the only connection between the company and the person using the lights is a contract between them and the company for the company to connect its system with the inside wiring of such parties and to deliver a current for their use, in the absence of knowledge on the part of the company of the defective condition of the wiring and appliances of such parties."

Clearly instruction No. 1 is further erroneous in respect to the degree of care required of the defendant, as being that which the dangerous character of the gas and the attending circumstances would demand "of an ordinary person" engaged in that work. The expression "of an ordinary person" whether or not it can be considered as misleading is nevertheless not as clear or definite as it would be stated by using the long accepted definition given of it as "that degree of care usually exercised by ordinarily prudent persons under circumstances like or similar to those proven in this case." Hobson's Instructions to Juries, page 513; Cross v. Illinois Cent. Railroad Company, 110 S. W. 290, 33 Ky. Law Rep. 432; West Kentucky Coal Company v. Davis, 138 Ky. 667, 128 S. W. 1074.

Further, an instruction defining ordinary care as here given by instruction No. 1, to be such care as an ordinary person will usually observe, was criticised as erroneous in Henderson City Railway Company v. Lockett, 98 S. W. 303, 30 Ky. Law Rep. 321.

From this it follows that instruction No. 2, as given by the court, is also erroneous, in that it undertook to apply the rule announced in instruction No. 1, telling the jury that if it believed from the evidence that the defendant, through its agents, etc., turned gas into the pipes leading into the Johnson building, from its pipes, which then flowed into a pipe leading into the office of the plaintiff through an unclosed opening at the end of the pipe and that in so releasing the gas the defendant failed "to observe and perform the duty required and set out in Instruction No. 1," etc., that they would find for the plaintiff.

Instructions Nos. 1 and 2, as given, we conceive are erroneous in the respect stated, and it is our opinion that the appropriate instruction which should here have been given under the evidence of the plaintiff, in support of his contention that the defendant company cut the gas into the building after it had knowledge, through its agent, Mr. King, that the gas pipe leading into appellee's room was uncapped and defective, is an instruction embodying the legal rule applicable in such case, as set out in the Smith Case, 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164, and Kentucky Utilities Company v. Sutton's Adm'r, 237 Ky. 772, 36 S. W. (2d) 380.

However, it is to be noted by the language of the instruction above quoted with approval, as being appropriate to the facts which the evidence substantially shows exist in this case, that in the absence of knowledge on the part of the company of the defective condition of the gas pipes in the building, it is not responsible for injuries resulting therefrom nor liable for cutting in its gas flow into the building without first making an inspection of the pipes, to see that its act of turning on the gas does not, considering its dangerous character, subject the tenants of the building to the hazard of explosion or other dangers.

In order to visit this knowledge upon the company, it was necessary that the condition of the gas pipe in appellee's office should have been communicated to the company and it put on notice thereby that the gas pipe in plaintiff's office was in an unsafe and unfit condition, making it dangerous to cut in the gas without its first being repaired.

Appellee states that he informed Mr. King that the pipe in his office was uncapped, and asked him to have

the same attended to, to which he replied that it would be done. Also, Mr. Noble states that he too went to the gas company's office where he found Mr. King presiding, evidently as the manager of the company's business, whom he requested to have the gas cut into his apartment in the same building as appellee's offices, when he replied that same would be attended to at once and which was done by his sending the company's service man, Brooks, to cut the gas into the building. It is to be noted also that Mr. King admits owning a majority of the company's stock and in such wise is interested in its business, and, so far as the evidence goes, appears to be the only one in charge of its business in Hazard, though Mr. King denies that he has any relationship with the company other than that of its legal adviser. The acts and conduct of Mr. King, in directing the business affairs of the company as stated, would indicate that he is authorized to do so and is in fact the manager of the company in Hazard. However, we will not discuss further this matter, as perhaps the fact of his agency for the company will be more clearly and definitely established by the evidence upon the next trial.

Of course, in view of the general rule of the law of agency, "that a principal is affected with constructive knowledge, regardless of his actual knowledge, of all material facts of which the agent receives notice or acquired knowledge while acting in the course of his employment and within the apparent scope of his authority, even though the agent may fail to inform his principal thereof" and that "the rule is not applicable unless the notice has reference to the business in which the agent is engaged under authority from the principal, and is pertinent to matters coming within the purview of such authority," in order to charge the appellant company with the knowledge that the gas pipe in Dr. Baker's office was in an unsafe and uncapped condition, such fact must have been communicated to an agent of the company, whose business and scope of authority was to look after and attend to such matters.

However, having reached the conclusion, as above set out, that the instructions Nos. 1 and 2 are erroneous for the reasons indicated, the judgment must be and it is reversed.

Cause remanded for further proceedings consistent with this opinion.