## Taylor-Green Gas Co., Inc., v. Newcomb.

June 11, 1946.

Davis, Boehl, Viser & Marcus, Fred Faulkner and George O. Bertram for appellant.

Lawrence S. Grauman, G. J. Rice and Herman Cohen for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

The appeal is from a judgment for Thirteen Thousand Six Hundred Seventy-Five Dollars ($13,675) in favor of appellee, for injuries sustained by him as a result of a gas explosion allegedly caused by the negligence of appellant's agents and servants, in Campbellsville. Appellee was employed to install a gas line from the first to the second floor of a building owned by Mr. H. H. Montgomery, and to connect thereto a stove in

an apartment on the second floor. He, with his helper, Albert Lamme, commenced work at 7:00 o'clock on the morning of October 11, 1944; their work was finished about 9:00 o'clock A. M. A few minutes before completing the work, gas commenced rushing through the pipe, which was promptly capped by appellee. When the work was completed, appellee and his helper returned to their truck, which was parked across the street from the building. They remained at the truck a few minutes, recording the time and charges for their work. While thus engaged, Mr. Montgomery called to them to come to the building to assist him in locating a gas leak. According to the evidence for appellee, Mr. Lamme immediately entered and proceeded to the rear of the building, where he discovered the odor of gas. The presence of the gas was about one hundred fifty feet from where the plumbers had been working. Shortly thereafter, appellee entered the building, and noticed a stove with an open flame near the entrance. He walked toward the rear of the building; within a few feet of the gas meter, he detected a strong odor of gas, and instructed his helper to turn the gas off immediately. He continued walking toward the helper, who endeavored to carry out his command; but before he could do so, a terrific explosion occurred. The entire floor on the lower story of the building was blown from the joists; appellee was hurled twelve feet to the ceiling, and fell on the joists, suffering severe injuries to his left knee, leg, ankle, and foot. Mr. Lamme testified that, previous to appellee's entering the building, the former struck a match and applied it to the piping approximately eight feet away from the meter, in an endeavor to discover the location of the leak; but he had blown out the match and had walked back to the meter before appellee entered the store. Unbeknownst to appellee, Mr. Montgomery had requested appellant to install a meter in the building, and two of appellant's servants commenced its installation at about 8:30 o'clock that morning. They finished their work at about 8:40, which was approximately twenty minutes before the explosion. They testified that they had inspected the meter the day before, and that it was in perfect condition; but admitted that they did not run the test usually and customarily made to determine if there were any leaks in the meter or in the line. This test is made by turning on the gas and observing an indicator on the meter. The indicator will

register if gas is escaping from the meter, the line, or through an open valve; if no valve is open or leak is present, the indicator will remain stationary. They attempt to excuse themselves for failure to make this test, by stating that they asked Mrs. Montgomery if she wanted the gas turned on, and, receiving a negative reply, they departed without making the test. The evidence shows that no one was in the vicinity of the meter where the explosion occurred after appellant's workmen installed it. Mrs. Montgomery, in her testimony, denied that she directed the men not to turn on the gas. Both she and her husband testified that Mr. Lamme struck a match near the meter, and the explosion immediately followed. It was shown in the testimony that the usual method adopted by plumbers to discover the location of a leak is by lighting a match and running it along the meter and the piping.

It is first insisted that appellee failed to introduce evidence of negligence on the part of the servants of appellant, or to introduce any circumstance from which negligence may be inferred. We are not impressed with this contention. Whilst the petition alleged several acts of negligence, the Court submitted only one to the jury, viz., the violation of the duty on the part of appellant to use ordinary care in the installation of the meter, to prevent escape of gas from the meter into the building. It is true that there was no direct evidence that the meter was defective, or that it was negligently installed; but there was an abundance of proof of circumstances from which the jury reasonably might have inferred negligence in its installation. And, while negligence will never be presumed, it may be proved by circumstantial evidence. In Taylor-Green Gas Co. v. Stearman, 262 Ky. 61, 89 S. W. 2d 305, the facts were so similar as to warrant our quoting at length from the opinion:

"The specific act of negligence to which plaintiffs' evidence was directed was the alleged improper installation of a meter in the Stearman home on the day before the fire was discovered. About 5 o'clock in the afternoon of May 23, 1934, I. C. Russell, an employee of the company, went to the Stearman home to remove the old meter which had ceased to register, and to install a new one. When he removed the old meter, he found that the top gasket was stuck to the nipple that went into the

pipe. He installed the other meter, turned on the gas, and tested it for leaks by striking a match. There was a leak at the top of the meter, and Russell fanned out the blaze with his cap, cut off the gas, put in a new gasket, screwed down the unions, and tested again with a match. He found no indication then of a leak at that point. About 10 o'clock on the following morning, Mrs. Stearman who was at a mill about 40 or 50 feet from the house, heard a roaring sound. When she went to the house, smoke was escaping through the floor. She opened the cellar door and saw a blaze at the top of the meter, which was located about 12 inches under the floor. She called her brother and uncle who were nearby, and they attempted to cut off the gas and put out the fire, but were unsuccessful in their efforts. The company insists that the appellees failed to introduce any evidence tending to show negligence on its part, which was connected with the injury complained of, and that the origin of the fire was left in the realm of surmise and speculation, which warranted a directed verdict in the defendant's favor.

"It is argued that the facts bring the case within the rule that, where the question is one of negligence or no negligence and the evidence is equally consistent with either view, the existence or nonexistence of negligence, the court should not submit the case to the jury. There was positive testimony, however, that the fire originated at the meter which was owned and controlled by the company, and which had been installed by one of its employees a few hours before the fire was discovered. The meter leaked after it was set and the employee turned off the gas, put in a new gasket, screwed down the unions, turned on the gas, and again tested the meter for leaks by striking a match. He failed to observe any blaze, and concluded there was no leak. There was proof to the effect that the proper practice is to turn off the gas after such a test, since a small blaze might escape detection. It is argued that, if the meter had been left burning, the gasket, being of rubber, would have burned out quickly and the blaze would have increased to such an extent that it would have set the house on fire within a few minutes; but there was proof to the effect that the blaze, if very small, would easily escape detection and several hours would pass before the rubber in the gasket burned sufficiently to increase the flow

of gas materially. There was sufficient proof, though of a circumstantial nature, to support appellees' theory as to how the fire occurred, and the court properly submitted the question of appellant's negligence to the jury. There was evidence that no one was in the basement where the meter was located after appellant's employee tested it and before the fire was discovered, and that he failed to follow the customary and proper practice in testing meters for leaks, in that he failed to turn off the gas after striking a match, although no blaze indicating a leak was observed by him.

" 'The sole test of the right of the plaintiff to go to the jury in negligence cases is, was there evidence or reasonable inference therefrom to show that the de fendant or defendants committed the act or acts of negligence complained of, and that the plaintiff was injured thereby? When there is sufficient evidence of this nature, then the court is not authorized to take the case from the jury, although the weight of all the evidence introduced may tend to show that the defendant did not commit the negligence complained of, or that the plaintiff was not injured thereby, or both.' Louisville Gas & Electric Co. v. Nall, 178 Ky. 33, 198 S. W. 745, 751."

In the Stearman case, the facts were more favorable to appellant than in this case. In that case, as here, the company installed a meter, the work was done at 5:00 o'clock in the afternoon, but the blaze starting the fire did not break out until 10:00 o'clock the following morning. In the instant case the explosion occurred within twenty minutes after the installation of the meter, and occurred at the meter itself. In the Stearman case, as in this case, it was shown that no one was near the meter after appellant's employee installed it and before the fire was discovered. The Court held that the jury reasonably might infer negligence in the installation of the meter from the circumstances shown in that case, although a test had been made. Certainly, the additional circumstance in this case, that appellant's servants failed to make the test, which manifested extreme carelessness on their part, strengthens the inference that the meter was negligently installed.

Wilson Gas Utilities Corp. v. Baker, 276 Ky. 368, 124 S. W. 2d 489, and Bishop v. Walker et al., 294 Ky. 590, 172 S. W. 2d 224, both of which are relied on by

appellant, are not in point here. In the Baker case, the gas company did not install the meter. The Court said [276 Ky. 368, 124 S. W. 2d 493]:

"Further, it is admitted that the defective gas pipe, from which it is claimed the gas here escaped which caused the explosion, inflicting the injuries complained of upon the appellee, was installed in the building by its owners, not by the gas company, upon whom the duty of their inspection and repair was imposed."

In the Bishop case, the accident occurred on November 17, 1941, and the meter had been installed six days prior thereto. On the forenoon of the day of the explosion, a plumber summoned by the decedent's employer removed a stove from the office to a restaurant operated for the accomodation of the employer's customers, and installed a new and larger gas stove in the office. Some hours later, a gas leak was discovered in the stove in the office, and the plumber was called to locate the leak. He applied a lighted match to the pipe connecting the stove which he had installed. The lighted match ignited the gas at the stove, causing the explosion and resultant fire. The evidence was conclusive that the proximate cause of the injury was the negligence of the plumber in installing the stove, and that no negligence on the part of the gas company caused the accident.

It is manifest that the evidence in this case was sufficient to submit the case to the jury, unless, as argued, appellee was guilty of contributory negligence as a matter of law, and which question we will now consider. This contention is based upon the evidence of Mr. and Mrs. Montgomery that Mr. Lamme, the servant of appellee, struck a match which caused the explosion, when he knew, or by the exercise of ordinary care should have known, that to do so was highly dangerous and might cause the explosion; and that since Mr. Lamme was the servant of appellee, his negligence is imputable to the latter, and is a bar to appellee's right to recover herein. The Trial Court imputed the action of the servant to the master in Instruction No. 4, wherein he told the jury that, if they believed that the match which was lighted by Mr. Lamme ignited the gas in the building, and that a person of ordinary prudence placed in the same situation would or should have known that it was dangerous to strike a match under the circumstances,

they should find for the defendant. We find it unnecessary to discuss the question of imputed negligence, or to determine whether applying a lighted match to a pipeline, in an endeavor to discover the location of a leak, is negligence per se. Assuming the servant's negligence, if any, to be imputable to the master, the conflict in the evidence in respect to the match being lighted at the time of the explosion required the question of contributory negligence to be submitted to the jury.

The final complaint is that the verdict is excessive. Appellee was fifty-five years of age, and had an expectancy of seventeen and one-half years, at the time of the trial. He was a master plumber, earning on the average One Hundred Four Dollars ($104) per week, and had maintained this earning power for many years previous to his injury. The tibia in the immediate vicinity of the knee was shattered into many pieces; the knee was dislocated laterally, causing the leg to bow at that point, and by reason of the bow to be one quarter of an inch shorter than the other leg. There was a seventy per cent loss of motion in the knee, and he had not regained use of his foot at the time of the trial. This condition is called "drop foot," because the patient is unable to lift it horizontally. He suffered intense pain; was examined by his family physician at the scene of the accident, and by him sent to a hospital in Lebanon; he was immediately sent in an ambulance to an orthopedic surgeon in Louisville. He was hospitalized in Louisville, where he remained until October 28; a cast was placed on his leg, and it was kept elevated for his entire stay in the hospital on that occasion. On October 28 he returned home, and was readmitted to the hospital on November 30, where the cast was removed and a new one applied. He remained in the hospital until December 9; returned again on December 26, and remained for a few days, the exact number of which does not appear in the record. At that time the cast was removed, and a steel brace extending from his hip to his foot was applied. He was required to return to the hospital for examination and treatment in February, March, April, May, June, July, and on August 14, which was one month before the orthopedic surgeon's deposition was taken. The trial was commenced on September 19, 1945, approximately eleven months after the accident. He has not regained the motion in his knee or foot; the

orthopedic surgeon predicted that arthritis will develop in the knee, and gave his opinion that the injuries are permanent, and that he never again will be able to engage in his trade. Appellee has little education, and has received no training in any other vocation; it is possible that he will be able to do some light work at low wages, but his power to earn money virtually has been destroyed. His hospital and doctor bills, exclusive of traveling expenses, at the time of the trial amounted to Seven Hundred Forty-One Dollars ($741); at that time his loss in earnings amounted to over Four Thousand Dollars, and, in less than two years after the trial, will have amounted to as much as the sum awarded him. A review of damages approved by this and other courts would serve no useful purpose, because every case must be determined by the facts peculiar to it; and the value of the dollar fluctuates to such an extent that an award of Thirteen Thousand Dollars at one time may be excessive, while at another it may not. Certainly the award in this case is not so great as to strike one at first blush as having been rendered as the result of passion or prejudice.

The judgment is affirmed.