## Aubrey's Adm'x v. Kent et al.

Nov. 17, 1942.

George W. Vaughn and Richard Colbert for appellant.

Robert H. Hays and Owen S. Lee for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The question before us is whether the evidence to establish delivery of a passbook was sufficient to take the case to the jury on the issue of a gift of a savings account of $1,012.66. The trial court held it was not and directed a verdict against the claimant.

Mrs. Mattie Aubrey, of Lexington, died July 16, 1931, survived by her sister, Mrs. Nannie Coryell, who lived with her, and a number of nieces and nephews. One of these, Mrs. Mattie McClanahan, also a widow, lived on a farm in Fayette County; her sister, Mrs. Lizzie Wallace, living with her. In proceedings in the county court, instituted against Mrs. McClanahan by six of the heirs, it was shown that she had disbursed $280 principally for a doctor's bill and funeral expenses, which was about what she had received as administratrix disregarding the claimed personal gift. She reported that Mrs. Aubrey had had $1,000 on savings deposit which she had given her during her last illness, saying that she wished her and Mrs. Wallace to have it in payment for the attention and services they had rendered Mrs. Aubrey and Mrs. Coryell during the years, and requested that in consideration of the gift they care for the latter who was an invalid. This was controverted. In a response to a later motion respecting a settlement and to have the administratrix removed because of her adverse claim, Mrs. McClanahan joined issue on some of the charges and stated that the decedent and her sister were very old; that Mrs. Aubrey was deaf; that during the last months of her life she was practically helpless. She outlined the services and attention given her. The movants limited their denial to

the justification of the appropriation of the savings account as a gift. The rest of the allegations of the response, therefore, stand admitted. It appears that only the deposition of Mrs. McClanahan, taken as on cross examination, was filed in the county court. In this she testified that her aunt had given her the account. Exceptions to her report as administratrix and the response were overruled, but it was ordered she be removed as administratrix because of the adverse claim. In due course the complaining heirs filed an appeal to the circuit court from that part of the judgment which had the effect of sustaining Mrs. McClanahan's claim to the savings account. She never appealed from the order of removal, and so far as this record shows no other action was taken by her as personal representative.

The evidence of several neighbors is uncontradicted that these nieces, particularly Mrs. McClanahan, were very kind and attentive to their aunts. Mrs. McClanahan came there practically every day and kept them supplied with farm products and sometimes groceries. She looked diligently after their care and personal needs. Mrs. Aubrey would often have a neighbor call Mrs. McClanahan at night and she would always respond promptly. Time and again Mrs. Aubrey expressed her devotion of and dependence upon Mrs. McClanahan, and told her friends that when she died she wanted her and Mrs. Wallace to have her property. Sometimes she qualified the statement that it should be after her sister Nannie was gone. To Mrs. Reynolds she had said: "If anything happens to me I have a thousand dollars Mr. Vaughn knows about it; it is insurance money; and I want Mattie to have it; I want her to have it." This, she said, was "because she has done more than any one else." There was no intimacy between Mrs. Aubrey and her other nieces and nephews, some of whom lived out of the state. They never came about her except one called at the hospital in her last days. When she died Mrs. Aubrey owned the house in which she lived, the furnishings and the savings account, and nothing more.

Sometime in the latter part of 1930, Mrs. Aubrey broke her hip and was taken to St. Joseph Hospital. While there she asked a neighbor, Mrs. Darnaby, to keep her passbook until she got home. After she was

taken home Mrs. Darnaby gave it back to her, saying she did not want to be responsible for it any longer. She saw Mrs. Aubrey take a black bag from under her pillow and put the book in it. After that, apparently a short time, Mrs. Aubrey broke her hip again. She also suffered from cancer. Mrs. Minnie Rose, her nurse, testified that on several occasions Mrs. Aubrey repeated what she had told others about wanting Mrs. McClanahan and Mrs. Wallace to have her property after her sister's death. Mrs. Rose testified:

"Q. Did you ever see Mrs. Aubrey give anything to Mrs. McClanahan? A. I don't know if I did or not. I know that one day when I was in her bed room and she was in her wheel chair she asked me to look under her pillow and give her her black bag. I got the bag for her from under the pillow and she took it and got something out of it and she either said 'Matt this is for you' or 'Matt I want to give this to you,' I don't remember which."

The witness did not see what the bag contained or identify what Mrs. Aubrey gave her. As to what she did see, as just related, she testified clearly and persuasively in an effort to develop something else from her under cross examination. As we read the record, this occurred after Mrs. Aubrey's leg was broken the second time and before she was taken to the Good Samaritan Hospital, where she died within a month.

On June 11, 1931, Mrs. Aubrey signed a will, but it was not probated because attested by only one witness. She undertook to give one-half of her personal property to her sister; certain articles of furniture to three friends; dishes to a grand niece; her watch to Mrs. Wallace; other dishes to Mrs. McClanahan; $25 each to four other nieces, and concluded: "If there is anything left when my sister dies it is to be divided equally between my nieces, Mrs. Lizzie Wallace and Mattie McClanahan, provided they have taken care of their Aunt Nannie." This was done by them until Mrs. Coryell's death a year or so afterward.

Virgil McClanahan, appellee's son, testified that a week or ten days before Mrs. Aubrey died, he saw her savings account passbook and her will in his mother's dresser drawer.

To perfect a gift of personal property there must

be a delivery of possession, actual, constructive or symbolic, with the intention to transfer title—permanently if inter vivos, either conditionally or permanently if causa mortis. The delivery of a savings account passbook consummates its gift and transfers the money on deposit to the donee if that was the intention and purpose of the donor. This, it is generally said, is because such book is equivalent to a certificate of deposit, the presentation of which authorizes withdrawal of the funds. Stephenson's Adm'r v. King, 81 Ky. 425, 50 Am. Rep. 173; McCoy's Adm'r v. McCoy, 126 Ky. 783, 104 S. W. 1031; Snidow v. Brotherton, 140 Va. 187, 124 S. E. 182, 40 A. L. R. 1246; 24 Am. Jur., Gifts, Sec. 104; 28 C. J. 665. The regulations or rules printed in Mrs. Aubrey's passbook provided that the depositor should bring the book to the bank "when you want to deposit and withdraw money." But the cashier testified the rule had not been strictly enforced. Whatever effect that could be said to have in derogation of the reason of the law as to the transfer of a savings account by the gift of the book, since this court, differing from many others, has held the rule of law to be applicable alike to a passbook evidencing deposits in a commercial or drawing account (McCoy's Adm'r v. McCoy, supra), the absence of need of presentation makes no difference. The cashier further testified that on Mrs. Aubrey's direction he had endorsed on the ledger sheet on August 16, 1920, the notation, "Don't pay any checks unless Mrs. Aubrey is present." There were several small withdrawals during the course of the years, but no evidence that this direction was observed. But this, it seems to us, does not of itself make any difference in the matter of transfer of the account by delivery of the passbook, just as it has been held to make no difference that a rule printed in a passbook required an order or power of attorney to authorize anyone other than the depositor to draw out the deposits, since such conditions are restrictions only upon withdrawals by the owner of the fund and not upon exchange of ownership. Brooks v. Mitchell, 163 Md. 1, 161 A. 261, 84 A. L. R. 547; 24 Am. Jur. Gifts, Sec. 108.

The ease with which a fraud may be perpetuated in cases of this character has always called for close scrutiny by the courts. So it has been reiterated in nearly every case involving a gift asserted to have been

made by one since deceased that there must be clear and satisfactory proof of every element requisite to a gift. Combs v. Roark's Adm'r, 221 Ky. 679, 299 S. W. 576; Hays' Adm'rs v. Patrick, 266 Ky. 713, 99 S. W. (2d) 805; Pikeville National Bank & Trust Co. v. Shirley, 281 Ky. 150, 135 S. W. (2d) 426, 126 A. L. R. 919; Chipman's Adm'r v. Gerlach, 286 Ky. 157, 150 S. W. (2d) 633. In the case at bar there is strong, clear and convincing evidence of all elements essential to sustain a gift. The only weak link in the chain of positive direct testimony is as to the identity of what was delivered and that, we are convinced, was established by strong circumstantial evidence. The weight to be accorded any particular element may be affected, one way or the other, by the evidence relating to any of the other elements, or all of them, and by the relationship of the parties and all circumstances attending the transaction. The weak link is re-enforced by the strong factors of a fixed purpose and of naturalness of the transaction— of a gift by a feeble, crippled, old aunt to one of the two closest natural objects of her bounty, made not only because of her devotion but in appreciation of or compensation for her attentive care and substantial maintenance and support. Other factors are the absence of suspicion of over-reaching or wrong-doing, and the existence of an unselfish attitude by the claimed donee throughout several years. Compare Brewer v. Allhands' Adm'r, 251 Ky. 178, 64 S. W. (2d) 469. Fortifying this is the oft-repeated intention of the donor, which, though not of itself sufficient to establish the gift (Hale v. Hale, 189 Ky. 171, 224 S. W. 1078), is one of the most important facts to be considered. Specifically, Mrs. Aubrey had referred to her savings account of $1,000 as "insurance money," which she wanted her niece to have. The banker testified the account had been opened in 1918 and the ledger sheet filed shows that it had grown slowly during the years to approximately the sum she stated. Her passbook evidencing this was regarded as very valuable—in fact it was apparently the only valuable thing she had except her home. She had had her friend take care of it while she was in St. Joseph's Hospital. When its custody was returned, she put it in her bag or purse which she kept under her pillow. Then not long before going to the other hospital after suffering the second accident and being afflicted with cancer, she called for that bag to be brought from

under her pillow and took something out and delivered it to her niece. There is nothing to indicate she had anything else of value in her purse, and its immediate disposition after taking out this article is not revealed. Before her death, the claimed donee had the treasured passbook in her possession in her own home in the country along with the donor's will, which unfortunately could not be given effect.

In the recent opinion of Stark's Adm'x v. Herndon's Adm'r, 292 Ky. 469, 166 S. W. (2d) 828, delivered November 10, 1942, it is pointed out: "Presumptive evidence is the proof of one fact, which when shown, has a legitimate tendency to lead the mind to the conclusion that another fact to be proven is in existence. * * * Circumstantial evidence is the proof of facts which have a legitimate tendency from the laws of nature, the usual connection of things, and ordinary transactions of business, etc., to show the reasonable mind that the disputed fact was or was not in existence." Because the salutary rule as to the disqualification of one to testify in his own behalf as to a transaction with a deceased person (Sec. 606, Civil Code of Practice), it is often difficult to prove it, if it was of a confidential nature, except by the circumstances and the presumptions. The foregoing facts, taken as a whole, it seems to us afford a reasonable inference or deduction that it was the passbook that the nurse saw Mrs. Aubrey give Mrs. McClanahan.

In Chipman's Adm'r v. Gerlach, supra, the rule for regarding indirect evidence was applied in the case of a claimed gift of a ring in possession of the fiancee of a deceased man who had expressed his purpose of giving it to her. We there said [286 Ky. 157, 150 S. W. (2d) 634]:

"The fact of manual possession of a chattel obviously is not in and of itself sufficient to warrant the presumption that there had been an actual delivery of it and an irrevocable and unconditional transfer of title. But possession is always an element in the donee's favor and an undisputed record of often repeated statements of the donor that he intended to give or had given something to the one who has possession of it gives rise to a factual presumption or inference that that intention had been consummated. Possession is open to explana-

tion and the force of the inference to uphold the claim of the donee of an executed gift is weakened if the donor is dead and the donee had ready access to his property and effects. Of course, circumstances alter cases and the peculiar facts of each determines the strength or weakness of the inference of a consummated gift which possession affords. They may create the antithetical presumption that there was no gift. Thus, in Moore's Adm'r v. Edwards, supra [248 Ky. 517, 58 S. W. (2d) 915], to cite an extreme instance, although the claimed donee had possession of some securities which had belonged to a deceased person, the circumstances afforded the clear inference that the possession was obtained by fraud and undue influence and that there had not been a valid gift inter vivos.''

In relation to the possession of a savings deposit passbook, in Union Trust & Savings Bank v. Tyler, 161 Mich. 564, 126 N. W. 713, 137 Am. St. Rep. 523, where a daughter was claiming title to the bank deposits through the possession of her mother's deposit books, which she claimed had been given her as a gift causa mortis, it was held that possession of the books, coupled with the mother's statement to the daughter in the presence of her husband to the effect that she wanted to give the money to the daughter, and her further statement to another witness that she had fixed things so that the daughter could get the money, indicated that the mother had given the daughter the books and the deposits represented thereby. And in Foley v. New York Savings Bank, 157 App. Div. 868, 142 N. Y. S. 822, it was held that evidence of possession of the bank book by the donee, coupled with clear evidence of the donor's intent to give it to him, rendered evidence that the donee received actual delivery of the book from the hands of the donor was unnecessary.

As shown in the notes of 40 A. L. R., 1257, 1262, and 84 A. L. R. 565, there are many cases holding that while mere possession of a bank book is not conclusive evidence of delivered possession, it is a fact to be weighed in considering ownership of the deposit.

Appellant cites two cases in which the transactions were much like that presented, but the identity of a

passbook in each was clear. The courts held gifts causa mortis had been proved. Brooks v. Mitchell, supra; In re Swade, 65 App. Div. 592, 72 N. Y. S. 1030.

The only evidence in the record of anything opposed to the claim of a gift (the evidence of the heirs not being presented because of the peremptory instruction given at the conclusion of the claimant's proof) is the statement of Mrs. McClanahan in her response filed in the County Court to the effect that the deceased had given the savings account both to her sister, Mrs. Wallace, and herself in payment for their attention and services, and the inclusion of Mrs. Wallace in the deceased's general statement of her wishes in respect to her property. Obviously, this goes to the credibility of the present claim; but in any event no one but Mrs. Wallace could raise any question of a right to a division.

On a motion for a peremptory instruction, the court of trial and court of review must regard all inferences that may be fairly and rationally drawn from the evidence favorable to the party opposing it. The direction of a verdict against him is not authorized unless after regarding every reasonable inference to be deduced from the testimony it can be said there is no evidence to support the cause of action sufficient to sustain a verdict in his favor. Nelson v. Black Diamond Mining Co., 167 Ky. 676, 181 S. W. 341; Holsclaw's Adm'r v. Louisville Gas & Electric Co., 267 Ky. 56, 100 S. W. (2d) 805. So regarding and measuring the evidence presented, we are of opinion that sustaining the motion for a peremptory instruction to find against the appellant was error. This conclusion is supported by the fact that on three other trials of this issue, two verdicts were returned in favor of the claimant and the jury disagreed in another. Apparently the two verdicts were set aside because of the view of the trial judge that the evidence was not sufficient to sustain them.

That part of the judgment which requires Mrs. McClanahan to make a settlement as administratrix is not authorized. She had been removed by the County Court, and this is not a suit to settle the estate. The issue was not raised and there was no prayer for a settlement.

Judgment reversed.

Whole Court sitting.