## Tebelman's Adm'r et al. v. Tebelman's Adm'x et al.

Feb. 26, 1943.

L. M. Ackman for appellants.

C. C. Adams and R. L. Vincent for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and reversing in part.

On an issue out of chancery the jury found that Wal-

ter Tebelman had given his wife a certificate of deposit in a bank for $1,160, a certificate of two shares of bank stock worth $450, and a check for $1,000, payable at his death. The court adopted the finding and rendered judgment accordingly: Tebelman's heirs appeal.

Tebelman died in August, 1939, survived by his widow, a sister, and two nephews, the sons of a deceased brother. His estate consisted of a farm worth about $10,000 and personal property of about $6,000 in value. He had inherited some land, but the estate was principally the accumulation of a lifetime of hard work, materially assisted by a faithful wife for more than 42 years. They never had any children, but he and his wife had reared her niece, who had married Guy Calendar in June preceding his death and he came to live with them for a while. His nephews, who lived nearby, were attentive and helpful. He suffered a disease of the heart and in his later years ceased working. It appears that Tebelman had the habit of carrying his securities on his person, particularly when he left home.

The evidence supporting the widow's claim of a gift is, in brief, that one day in June preceding his death, Tebelman had soiled his clothing while lying on the bed. When his wife and Guy Calendar had assisted him and removed his trousers, in which was a pocket book, wrapped in a cloth, he told his wife that he was going to give it to her and that she should put it away where nobody could find it, saying, ''It is yours.'' He told her not to look in the package, and she responded that she did not have to as she knew it was his certificates, and he confirmed it. She then put the package down a meal sack and placed it on a shelf in her clothes closet, or wardrobe, where it remained until after her husband's death. The purse also contained a certificate of deposit in another bank for $3,500, on the back of which Tebelman had written and signed: ''I want Sallie to have this time savings certificate.'' That certificate is not involved in this case, but the widow's right to it appears to have been questioned in another suit. A week or ten days before Tebelman's death, when his family had gone to town, he told an old friend and neighbor that he would like to have gone with them as he wanted his business straightened up; that he thought he had ''the money part of it all right,'' but there were some other things he would like to have fixed different from what it was. Ap-

parently it was along about this time that he suggested to his wife's brother that he didn't think he was going to live very long and that he "would like to have the land fixed so it would be satisfactory to Sallie," and if he could go to town he would fix it; that he didn't want his nephews to know what he had, and "my money is fixed," saying that he had about $5,000 on time deposit.

On the other side of the case is evidence that Mrs. Tebelman had qualified as joint administratrix with her husband's nephew, Henry Tebelman. She had signed the appraisement of his estate, listing the certificates; had endorsed the time deposit certificate for $1,160, in order that the sum could be placed in a checking account for disbursement; had conveyed her dower in the land for $995.40, its present worth, to the nephews—all without making any claim to ownership of the securities. About a week after Tebelman's death, when his sister and two nephews had come to the house, Henry Tebelman testified they could not find his uncle's bank papers in a table drawer where he had kept them, and Mrs. Tebelman said she didn't know where they were, but thought they were in his pocketbook and she would look for them. She went to a wardrobe and brought out his bank deposit book in which were the certificates of deposit, and said she had found it in his coat pocket. The pocketbook his uncle had usually carried in his hip pocket was much larger than the one exhibited at the trial, which the witness had never seen before. He denied the testimony of Mrs. Tebelman previously given that at this meeting she had got the package from her wardrobe and presented it wrapped in the cloth. The testimony of Albert Tebelman, the other nephew, is substantially the same as to what occurred at the family meeting, but he related that the widow had then brought the package containing the pocketbook wrapped in the soiled cloth, having got it from the table drawer. The sister of the deceased testified that the widow stated that when her husband was sick he had some papers in his hip pocket with a handkerchief around them, and she had suggested giving it to her to put away, and that she had put it in his coat pocket. She got it out and said she didn't know what was in it.

The widow had previously testified that on Monday following her husband's burial on Saturday, Henry asked about his uncle's valuable papers and if she took

them with her when she went out. She replied that she did not, and he suggested placing them in his safety box. A few days later when going on a trip with friends she got the package from her wardrobe and took it along with her, stopping at Henry's home and leaving word with his wife that she was taking the papers with her. Her niece had testified that her aunt had taken the papers with her that day. It is submitted that this testimony negatived whatever might have been the effect of the testimony as to where she obtained the papers to exhibit to the family, although she had testified that at that time she got them from her own wardrobe. Her explanation as to having signed the appraisement and endorsed the certificate is that she was inexperienced in business, was relying on her husband's nephew to attend to everything, and that she thought it was necessary to endorse the certificate in order to get money for the payment of funeral expenses. During all these transactions she did not know her legal rights.

The appellants submit that the evidence of inconsistent action on the widow's part and of the deceased's endorsement of the statement on the $3,500 certificate that he wanted his wife to have it, without having made a similar endorsement on the other securities, destroy the claim that he had given these certificates to her.

The question we have is confined to whether the evidence is sufficient to sustain the decision that the old pocketbook containing the certificates was delivered to the wife as custodian or agent to put away for the husband or was delivered with the intention of giving its contents to her, either as a gift causa mortis or inter vivos. We have recently had a case involving the gift of a savings deposit passbook by an invalid to her niece. The particular question was the identity of what had been taken from a purse and handed to the niece, with the statement of the aunt that she wanted to give it to her, or "This is for you." The evidence was that the niece had the passbook in her possession when the aunt died; that she had often expressed her obligation to and appreciation of her niece's attention and care; and that she wished her to have her property and had signed a testamentary paper devising the remainder interest of her estate to the claimant and another niece, which could not be probated because not properly attested. We held the evidence was sufficient to authorize the submission

to a jury of the question whether or not there had been a gift of the passbook which, as a matter of law, would constitute the gift of the deposit which it evidenced. Aubrey's Adm'x v. Kent, 292 Ky. 740, 167 S. W. (2d) 831. The deductions from the evidence and the consideration of the law given in the opinion are applicable here. It and the cases cited, with the addition of Broaddus' Ex'rs v. Broaddus, 27 S. W. 989, 16 Ky. Law Rep. 330, are sufficient precedents to support the finding of the jury and the chancellor that there was a completed gift to the wife of the two certificates.

The claim of the gift of $1,000, represented by the check, is different. The widow testified that in February, 1940, six months after her husband's death, while looking through a box of clothing for some pieces for a rag rug she was making, she found a pair of her husband's old trousers and in the pocket a check book in which was an attached check dated July 20, 1939, for $1,000, payable to herself, "At my death" and signed by her husband. His handwriting was otherwise proved. The bank having declined payment, the check had been probated in the county court as a holographic will. Being called upon in this case to elect whether she would rely upon the claim of a gift or of a bequest, the widow elected the former. The question was submitted to the jury whether the deceased had given and delivered the check to his wife "with the intention and purpose to make it hers," and the jury answered affirmatively. There is lacking the essential elements of a delivery and acceptance; hence no gift was established. Hays' Administrators v. Patrick, 266 Ky. 713, 99 S. W. (2d) 805. See also, as particularly applicable to the claim of a gift by means of a check, Dickerson v. Snyder, 209 Ky. 212, 272 S. W. 384. We are of opinion the evidence is not sufficient, as a matter of law, to sustain the claim of a gift and the court should have so adjudged.

The judgment for the value of the certificates of stock and deposit is affirmed, but that part for $1,000 representing the check, is reversed.