# Sherman v. Adams.

### April 19, 1946.

J. L. Harrington and Wallis Bailey for appellant.

M. F. Patrick for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The suit is by Mrs. Mollie Adams against her husband's sister, Mrs. Jennie Sherman, to recover $3500, alleged to have been taken from the plaintiff and converted to the defendant's own use. The defendant's appeal from an adverse judgment rests upon the ground that the evidence is not sufficient to support the verdict either in respect to taking the money or its ownership.

One Sunday in October, 1937, the defendant and her family went to spend the day with the Adamses, who lived on Lick Fork of Jennings Creek, in Johnson County. The plaintiff testified that she was not well and her ten-year-old boy was sick in bed. Mrs. Sherman set about to help prepare the dinner. When Mrs. Adams was in the yard her son called to her to come in and when she did so she found the defendant gathering up money from a trunk and stuffing it in her bosom. She picked up a pistol and threatened to kill the plaintiff if she said anything about it. The boy testified that he

had heard a noise in his mother's room and got up from his bed to investigate it and when he saw his aunt taking the money he called his mother. He corroborated her as to the drawing of the pistol and the threat. Cynthia Williams, a neighbor, testified that she stopped by the Adams' house to get her little child a drink of water and saw the defendant through a window taking the money from the trunk. The plaintiff further testified that the defendant immediately left the house upon being discovered and went to where both their husbands were in a field. She took something from her dress and handed it to her husband who put it in his pocket. Dorvel May, a neighbor, who was passing by, saw a woman who looked like the defendant come out of the house and go in the direction of two men in the field. Leonard Hall, another neighbor, testified that while waiting in a car nearby he saw the same thing. According to Mrs. Adams, the defendant had not been in her home since 1933, when her father had died, and after this instance there was no friendliness or communication between them. Mrs. Adams had had the defendant indicted for taking the money, but, as she testified, she dropped the prosecution at the instance of her husband who did not want his sister to go to the penitentiary. She had delayed bringing this suit for four and a half years because of his objection. He died a few months after the suit was filed.

The defendant denied categorically all the evidence of the plaintiff, even that relating to immaterial and collateral details respecting the visit. There could have been no clearer contradiction. She testified that they had a pleasant visit and were invited to return. She is corroborated as to many of the collateral details and the friendliness between the two women that afternoon, which was after the hour the plaintiff claimed the defendant had taken the money, by Sherman Tackett, a young man who was living with the Adamses, and as to the invitation to return by a taxi driver who had come for her and her family to take them to their home in Paintsville. She was corroborated in all other respects by her husband, son, and two daughters. None of these witnesses saw any of the neighbors who testified for the plaintiff.

In rebuttal, the plaintiff contradicted substantially all the affirmative evidence introduced by the defendant.

It was revealed that the plaintiff had also accused two other sisters of her husband with having stolen money from the trunk on another occasion. She admitted having accused one of them of taking about $4,000, but related that this other sister "had us carrying her bank account book, and said, 'Wes, I ain't got no children,' and says, 'what I have got belongs to you,' and Wes says, 'Molly remember that I am going to get every cent she has got.' " Also that she had done nothing about this taking of the money because the sister had said, "Wes, you are going to get every dollar I have got," and " 'if you don't believe me I can show you the papers showing it. I will have to go to the bank before I can show you.' "

The plaintiff was quite voluble, as might be expected of an illiterate woman who is angry. We are confronted with a record of evidence directly in conflict. The appellant argues the whole story is the product of imagination and that she never got any money from the plaintiff. There are adverse inferences to be drawn from some of her story and some of the apparently unnatural conditions related, as well as the inference to be drawn from so great a delay in bringing the suit. It is to be remembered that her excuse was the objection of her husband; but it was filed during his lifetime. The clearest thing about the case is that there was a question of fact to be determined by the jury. It was composed of twelve women sitting in judgment upon the testimony of two other women. The jury saw and heard all the witnesses and reached a unanimous verdict for the plaintiff. We cannot say that the evidence is not sufficient to sustain the verdict that the defendant did take the money.

The appellant argues that the evidence is too vague and indefinite to prove that the plaintiff owned the money charged to have been taken. The evidence to be weighed is that of the plaintiff alone as there was no direct contradiction. We summarize it: She had $500 when she married and her husband also had some property at that time. They had worked hard and accumulated more money which had been kept together. They had taken care of his parents for many years and during this time her husband had given money to his mother in order to please her. At an unspecified time before her death in 1924, the mother had called the plaintiff and her husband

to her bed, where she kept her money, and gave all she had to them, saying: "Molly, it is yours," and insisted that she should carry the key to the trunk in which it was placed. She did not count the money then. At some unrelated time after the mother's death, she and her husband had $10,800 in currency in her trunk. He had given all the money or his interest in it to her so that if anything should happen to him she would have it to take care of herself and children. It appears that they had bought a farm with some of the money. The plaintiff testified that she had $5,700 in the trunk when the defendant raided it. That night she found $3500 missing. There is a little indefinite testimony to the effect that the mother never did have any considerable amount of money.

This story of gifts by her mother-in-law and husband may seem unreasonable to many minds, but again we are up against the proposition that its truth was essentially a question to be determined by the jury. While possession of money or other personal property claimed to have been given the holder does not in and of itself clearly establish a gift inter vivos, yet possession is an element in the claimed donee's favor, the relative weight or value differing according to the circumstances. Aubrey's Adm'x v. Kent, 292 Ky. 740, 167 S. W. 2d 831. In considering its sufficiency to sustain the verdict, we regard not only the letter of the testimony tending to show title in the plaintiff, but every reasonable inference to be deduced from it. We cannot say that a verdict for the defendant on either issue should have been directed.

The judgment is affirmed.