## Combs et al. v. Peoples Bank et al.

May 26, 1950.

Charles S. Whittle, Judge.

Don A. Ward and Wm. Melton for appellants.

C. A. Noble for appellees.

STANLEY, COMMISSIONER—Affirming judgment for defendant bank, and reversing judgment for defendant Berryman.

This is a suit by the administrator and nine children of the late Mrs. Elizabeth Combs to recover for the estate $2,500 from another daughter, Mrs. Sadie Berryman, and the Peoples Bank of Hazard. It was charged that the deceased had deposited with and entrusted the defendants with the money. The bank entered a general traverse but answered as garnishee that it had on deposit $2,097.50 to the credit of Mrs. Berryman. She pleaded affirmatively that her mother had had a check for $2,500 drawn to her as payee on August 15, 1946, to pay for her services in caring for her mother. By reply, the plaintiff set out circumstances to be related as given in evidence and charged that their mother, who was 92 years old and feeble in body and mind, was in-

competent to dispose of her property; that if she had given the defendant daughter a check as claimed, it was under her undue influence, and the transaction was void. After the close of the evidence in behalf of the plaintiffs, the court, a special judge presiding, peremptorily instructed the jury to return a verdict for the defendants.

Though the bank is named as an appellee, there is no argument that the direction of the verdict in its favor was an error and that part of the judgment will be affirmed.

We closely summarize the evidence. Mrs. Combs had sold her land in May, 1946, for $15,000 cash. At a family gathering she wanted each of her ten children to receive $1,000, and she had the purchaser, then present, Barney Baker, to make out ten such checks and deliver them. She was then staying in her old home place with Mrs. Berryman and wanted to remain there. All agreed that Mrs. Berryman should be paid $2,500 to take care of her mother as long as she lived, and a check for that sum was then made out by the purchaser and delivered to Mrs. Berryman. The mother wanted to keep the remaining $2,500 since she did not know what she might want in the future, saying that what was left should be divided among all the children. A check payable to her was deposited to her credit in the bank. The mother was illiterate and on this occasion was confined to her bed. It appears that since her husband's death, a number of years before, her business had been attended to by her eldest son, Henry Combs. The bank had endorsed on its deposit record that no check on Mrs. Combs' deposit should be honored unless approved by him. This memorandum was made at his request.

On August 15, 1946, Mrs. Combs' signature "by mark" was placed on a check for $2,500 payable to Mrs. Berryman. The signature was witnessed by Dr. Lyndon F. Combs and Victor Delpont. Apparently through oversight, the bank disregarded the memorandum on its record and honored the check by depositing the sum to the credit of Mrs. Berryman. This is what is sought to be recovered.

The old lady had fallen from a porch a short time before the date of the check and could not thereafter get out of bed. Several instances are related which show

her senility. Among these may be mentioned that she insisted that her daughter, Mattie, who was visiting and waiting on her one morning, was a girl whom Mrs. Berryman should hire to wait on her. She told some of her children that she had a little joke to tell them. It was that Sadie had pushed her off the porch. This was purely imaginative. Henry visited his mother frequently and one morning, in Mrs. Berryman's presence, he asked his mother if she remembered giving Sadie a check for $2,500 to take care of her, and the old lady insisted that she had not given Sadie any more than the rest of them but had divided all of her money equally among her children. Mrs. Berryman, however, confirmed the statement that she had received $2,500 for that purpose.

There was evidence by some of her children that when they had gone to see their mother after the division of the money in May, Sadie, or some member of her immediate family, had insisted upon staying in the room all the time.

Dr. C. B. Combs, who was not her regular physician, had been taken by one of the sons to visit his mother at her request. This was two or three weeks after she had suffered the fall and was about the time the check in controversy was drawn. He testified that, "She was in bed, laying to the left. I pulled her over so she could see me and I asked her who I was. She didn't know me. I said, 'Do you know Lacy?' She didn't say. I said 'You know Jack Combs, the one you called brother all the time?' She didn't know that. I said, 'This is Britt.' She said, 'Is this Britt?' I said 'You remember me and Liza and Sis and you going over to eat dinner with Dad?' She said, 'No,' she didn't know nothing about it." As a hypothetical question (which did not embrace all the favorable indicative facts, however) Dr. Combs was asked whether, in his opinion, the old lady "had mental capacity, sufficient to know the nature, character and extent of a business transaction wherein she gave the defendant, Sadie Berryman, $2,500." He answered, "Absolutely not."

The evidence proves these circumstances: (1) An illiterate woman, 92 years old, bedfast and suffering all the mental infirmities of senility. (2) She was in the complete custody and control of the daughter. (3) She had done what she had no purpose of doing three months

before when all her family was about her. (4) She divested herself of her entire estate. (5) She had already liberally paid her daughter to take care of her. (6) The only doctor who testified was of the very positive opinion that she was mentally incapable of conducting a business transaction. (7) The evidence disproves the contract relied upon by the defendant in her pleading. It left much to be explained. As stated in Moore's Administrator v. Edwards, 248 Ky. 517, 58 S. W. 2d 915, 919, "Because the law does look with suspicion upon a transfer of property by persons mentally or physically infirm to those having custody of or living with them, or where there exists a relation of trust and confidence, the burden is placed upon the party endeavoring to sustain the conveyance to prove the transaction to have been voluntary, free from undue influence, and devoid of vice rendering it inequitable or unfair. (Citations.) The same burden of establishing a gift inter vivos rests upon the one claiming it. (Citation.) Under such circumstances a presumption of fraud arises more readily than in case of a contract. (Citation.) Gifts first asserted after death of the donor are regarded with suspicion and must be established by clear and convincing evidence, particularly where the relations are such as existed here. In such cases the courts will closely scrutinize the transaction claimed to constitute the gift. (Citations.)"

There are many cases to the same effect. Of particular application to the present state of facts is Miller v. Taylor, 165 Ky. 463, 177 S. W. 247. See also McDowell v. Edwards' Administrator, 156 Ky. 475, 161 S. W. 534; Shaver v. Weddington, 247 Ky. 248, 56 S. W. 2d 980.

It is true the evidence in the case, other than that of Dr. Combs and the banker, was that of the plaintiffs, which was rendered competent because what they related was said and done in the presence of the defendant, Mrs. Berryman. But this fact only went, of course, to their credibility, and that is affected only by their self-interest.

The cases relied upon by the appellees are distinguishable. In Smith v. Gilligan's Administrator, 276 Ky. 533, 124 S. W. 2d 798, there was no evidence other than of an opportunity to exercise undue influence. There was no evidence of other factors and circumstances tending to show that it had been exercised upon

a mentally weak person; on the contrary, there had been a fair and rational disposition of the property. In McKnight's Administratrix v. McKnight, 282 Ky. 522, 139 S. W. 2d 426, there was not even a scintilla of evidence of mental incapacity or undue influence. The point relied upon the Pikeville National Bank and Trust Co. v. Shirley, 281 Ky. 150, 135 S. W. 2d 426, 126 A. L. R. 919 and Tebelman's Administrator v. Tebelman's Administratrix, 293 Ky. 415, 169 S. W. 2d 39, related to the sufficiency of evidence of a delivery of a claimed gift inter vivos. In none of these cases was presented substantial evidence of mental capacity or circumstances anything like those proven by the plaintiffs in this case.

In Aubrey's Administratrix v. Kent, 292 Ky. 740, 167 S. W. 2d 831, an administratrix defended a suit to recover assets of the estate upon the ground that the amount represented a savings account which had been given and transferred to her personally by the decedent. The trial court had peremptorily directed a verdict in favor of the heirs. That is the converse of the present case. But the principles are the same. Discussing the various factors and weight to be given different circumstances and conditions, we held the peremptory instruction to have been error, saying, "On a motion for a peremptory instruction, the court of trial and court of review must regard all inferences that may be fairly and rationally drawn from evidence favorable to the party opposing it. The direction of a verdict against him is not authorized unless after regarding every reasonable inference to be deduced from the testimony it can be said there is no evidence to support the cause of action sufficient to sustain a verdict in his favor."

We are of opinion that under that rule it was an error to take this case from the jury for we think the evidence was sufficient to place the burden upon the defendant, Mrs. Berryman, to justify the transfer of the money.

The judgment in favor of the People's Bank is affirmed. That in favor of the defendant, Mrs. Berryman, is reversed.